UNITED STATES *v.* MAY DEPARTMENT STORES CO. (No. 3104) [1]

---

[1] T. D. 43090.

United States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument October 8, 1928, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The issues in this case involve the proper classification of graduated bead necklaces in imitation of emeralds.

The necklaces and other articles were imported together. Appellee protested the classification of all of the articles but at the hearing limited the issues to the necklaces. The court below sustained the protest as to the necklaces, from which action the Government has appealed.

The necklaces were assessed for duty under paragraph 1428 of the Tariff Act of 1922 as "jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued at above 20 cents per dozen pieces." The court below held them dutiable at 60 per cent and sustained the claim of the importer that the necklaces were dutiable at 45 or 60 per centum ad valorem under paragraph 1403, the pertinent parts of which are as follows:

* * * articles * * * composed wholly or in chief value of beads * * * other than * * * beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; * * * all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem: * * *

The necklaces consist of graduated beads securely strung on a strong string, fastened at the ends so that the union of the strings is not observable even on close examination. The beads are green and faceted. Between each bead is a faceted glass rondelle, clear and transparent, in imitation of crystal.

The importer introduced two witnesses, one to identify the sample and the other was presumably introduced for the purpose of proving that the exhibit was not known in the trade as jewelry, but that it was bought and sold as a notion. This witness, Harry Milton Blank, after showing quite an extensive experience in the trade in the United States in buying and selling similar merchandise, testified that the exhibited necklace would be sold as imported and would be worn as imported, by women, as an article of adornment; that the green faceted beads were graduated and in imitation of emerald, and that the rondelles simulate "a semiprecious stone, rock crystals, which

come in semiprecious-stone form from Germany"; that it was a cheap article of commerce known in the department stores as a notion and was not kept in the same department as the department store jewelry; that it was sold as a necklace; that a customer would ask for necklaces and that, in his belief, it was not jewelry.

The Government introduced no evidence.

After reviewing the testimony the court below said:

Therefore, Mr. Blank's very positive and clear testimony that this merchandise is not jewelry remains uncontradicted by the Government. Possibly the Government was unable to contradict it.

As the case now stands we have the presumption arising from the action of the collector that this merchandise is jewelry, commonly or commercially so known, and the very positive and clear testimony of Mr. Blank that it is not jewelry.

The importers having assumed the burden of overcoming the presumption and having introduced testimony making a prima facie case controverting the presumed facts, then the presumption attaching to the collector's finding falls. Then if the evidence supporting the importers' contention outweighs the evidence supporting the collector's position, the importers are entitled to a decision in their favor. *In weighing the evidence, the presumption of correctness attaching to the finding of the collector is not to be regarded as having evidential value, and can not be weighed against the evidence of the party challenging the correctness of his finding.* (Italics ours.) *Morse* v. *United States*, 13 Ct. Cust. Appls. 553, 562, T. D. 41432.

Therefore, we are of opinion that the plaintiff has shown that the collector's classification was erroneous and that these bead necklaces are not jewelry.

It will not be necessary for us to pass upon the question as to whether or not the testimony of the witness amounted to sufficient commercial proof to make a prima facie case since, in our view of the case, it makes no difference how it was known commercially, because the necklace is jewelry within the common conception.

The above-quoted excerpts from *Morse* v. *United States* might have a bearing in determining the issues, if the jewelry paragraph referred only to jewelry commercially so known, since it is clear that if the only issue was as to the commercial understanding as to whether the imported article was or was not jewelry, and there was a prima facie case made out and no rebuttal of the same, then the burden placed upon the appellant would have been met and it would have been entitled to the decision.

The difficulty with the viewpoint of the court below is that the statute provides not only for jewelry which is commercially so known but also for jewelry commonly so known, and regardless of whether it is finished or unfinished or of whatever material composed. Now, it requires no citation of authority for the statement that in determining the common meaning of a term, testimony is only advisory and has no binding effect upon the court, since the common meaning of a term is ordinarily within the cognizance of the court, and the court may further obtain knowledge of the common meaning of a term from the

dictionaries, lexicons, written authorities, or from witnesses. In classification cases like the one at bar the sample is ofttimes a very potent witness. Therefore, if the testimony of the witness Blank can be said to be directed to the common meaning, as well as to the commercial meaning, and if his testimony could be interpreted to mean definitely that within the common meaning of the term this article, regardless of the material of which it was composed, was not known as jewelry, this fact alone would not be binding upon the court, under the rule in the *Morse* case, *supra.·* *United States* v. *Woolworth Co.,* 10 Ct. Cust. Appls. 194, T. D. 38552.

In the first place, the collector found this article to be jewelry commonly or commercially so known. The testimony, in our opinion, of appellee's witness as to the characteristics and use of the necklace and the sample before us convince us that within the common acceptance of the term the article is jewelry.

It is needless to go into the history of the jewelry provision. The meaning of the term "jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces," as distinct from all jewelry provisions in previous Tariff Acts, was thoroughly discussed in the two ruling cases on the subject in this court in *United States* v. *Doragon Co. et. al.,* 13 Ct. Cust. Appls. 182, T. D. 41051, and *United States* v. *International Forwarding Co.,* 13 Ct. Cust. Appls. 190, T. D. 41052. Since the two last-cited cases were handed down, this court has had occasion, more than once, to again pass upon similar questions.

*United States* v. *Flory & Co.,* 15 Ct. Cust. Appls. 156, T. D. 42219, would seem to cover the issue at bar in every particular and our decision and reasons therefor in that case are absolutely controlling here. There we said:

In the *International Forwarding Co.,* case, *supra,* we held in substance that, since the collector had assessed the articles as jewelry and thereby found that they were commonly or commercially known, or both commonly and commercially known as jewelry, and since there was nothing to show the contrary, the fact that the necklaces were composed of mother-of-pearl beads did not dispute the finding of the collector.

It is evident that the importer, in the case at bar, believed: First, that it could prove that commercially the galalith necklaces were not known as jewelry (in this it failed); second, that if it proved that they were not commonly known as jewelry the court would be bound by the weight of the testimony of the witnesses produced.

It must be borne in mind that the courts have uniformly held that while evidence may be received by the court as to the common meaning of a term and as to the name to be applied to a given article, in the common acceptance, if the subject matter covered by the testimony is a matter of judicial knowledge, the court is not obligated to accept it, but may consult the dictionaries, lexicons, and other authorities, and also draw upon its own knowledge of matters within the common understanding.

Now, it is obvious that there are some articles which might by some be styled jewelry, of which the court would have little or no knowledge and concerning which there were no acceptable authoritative expressions. In this kind of an instance courts would naturally accept the weight of evidence, if such evidence was regarded as satisfactory in meeting the issue and in overcoming the presumption of correctness attaching to an officer's performance of a statutory duty. But let us bear in mind that the instant case involves again the definition of jewelry within the tariff sense, as provided for in paragraph 1428, when applied to a finished necklace, ornamental in character, and worn as ornamental necklaces are worn. It is within the common understanding that necklaces, earrings, brooches, finger rings, and certain pins worn upon the person for adornment are jewelry, and as far as we know always have been and always will be so regarded. This court and other courts have on repeated occasions held them to be jewelry.

Under tariff acts prior to the present one a finished necklace was always held to be jewelry if composed of the materials prescribed in the *American Bead Co.* case, 7 Ct. Cust. Appls. 18, T. D. 36259. One of the many pertinent citations may be given as *United States* v. *Woolworth Co.*, 10 Ct. Cust. Appls. 194, T. D. 38552. In this case the merchandise consisted of imitation pearl bead necklaces, finished with a metal clasp. The articles were of the cheap, 10-cent variety. Notwithstanding the fact that there was some testimony to the effect that the article was not jewelry, the court said:

The matter of common acceptation is always one wherein the court will be guided by the samples and its judicial knowledge, and will not be controlled against its judgment. The only element of the case militating against these articles being deemed jewelry is their cheapness.

Numerous authorities were therein cited as holding bead necklaces to be jewelry, among them being *United States* v. *Kraemer & Co. et. al.*, 5 Ct. Cust. Appls. 294, T. D. 34474, where certain cheap necklaces of glass beads were involved.

The board held that there was no presumption of correctness in the collector's finding, for the reason that witnesses testified in great numbers, and cited *Morse* v. *United States*, 13 Ct. Cust. Appls. 553, T. D. 41432. It certainly is a correct statement of the law that, before the Board of General Appraisers or in any other judicial trial forum, the presumption attaching to the correctness of an officer's act falls only when some substantial evidence has been introduced to contradict it. The opposing party then must meet the issue and rebut the proof offered.

The board has improperly applied this principle in the case at bar, or rather it might be said that it has, under the circumstances, erroneously given controlling influence to this principle. Some of the witnesses have said, chiefly on account of material or cheapness, that these necklaces are not jewelry. The court knows, and has held, that they are jewelry. If the articles under consideration were of such character that the courts could not take judicial knowledge of them, then the principle laid down in the *Morse* case would be applicable, and justly and properly so.

Suppose the question before the court was, is a horse an animal, and the proof would show that a horse was not an animal. It is doubtful if the testimony in this kind of supposed case would be regarded by any court as any evidence at all. But, certainly the principle laid down in the *Morse* case (which is in no sense a new one) would not control as against the judicially known fact and judicially decided fact, that a horse is an animal.

The decision of this court in *Flory & Co., supra*, was evidently overlooked by the court below, since it decides the exact point passed upon.

The judgment of the United States Customs Court is *reversed*.