The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* FRANKEL IMPORTING Co. (No. 3344)[1]

United States Court of Customs and Patent Appeals, November 3, 1930

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*. special attorney, of counsel), for the United States.

*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellee.

[1] T. D. 44378.

[Oral argument October 9, 1930, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification of merchandise known as *schlung beads*, which was classified and assessed for duty by the collector at 90 per centum ad valorem under the first provision of paragraph 1430, Tariff Act of 1922, as beaded trimmings.

The importer protested, making several claims, as follows:

Said merchandise is not dutiable as assessed. It is dutiable rather at 35 per centum under the first clause of paragraph 1403, or at 45 per centum under the latter part of paragraph 1403 or at 60 per centum under the third clause of paragraph 1403 or at 20 per centum or 60 per centum under paragraph 1429 or at 60 per centum under the second clause of paragraph 218 or at 20 per centum under paragraph 1459.

It is further alternatively claimed that said merchandise is dutiable as articles or manufactures according to component material of chief value and it is therefore dutiable at 50 per centum under paragraph 230, 25 per centum under paragraph 42, 55 per centum under paragraph 218, 40 per centum under paragraph 399, 20 per centum under paragraph 1438, 25 per centum under paragraph 1439, 33⅓ per centum under paragraph 410, or at 35 per centum under paragraph 32, or paragraph 1440, or at 60 per centum under paragraph 31, or at 40 cents per pound and 25 per centum under paragraph 33.

The court below sustained the protest, holding that the merchandise is dutiable at 35 per centum ad valorem as beads under the first part of paragraph 1403, as claimed, and judgment was accordingly entered.

From this decision the Government appeals, contending that the classification of the collector is the proper one.

While the importer in its protest made the several claims listed above, there are only two of them which have been urged here: these are the claim under the first part of paragraph 1403, which was sustained by the court below, and in the alternative the claim that the merchandise is dutiable at 60 per. centum under the third clause of paragraph 1403 as an article composed wholly or in chief value of beads. Accordingly, we will confine ourselves to a consideration of the classification of the collector and to the two claims involved under paragraph 1403.

The pertinent provisions of these two paragraphs read as follows:

PAR. 1430. * * * trimmings, * * * ornaments; * * * and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished * * *, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of * * * beads, * * * 90 per centum ad valorem; * * *

PAR. 1403. * * * beads, * * * 35 per centum ad valorem; * * * fabrics and articles not ornamented with beads, * * * composed wholly or in chief value of beads * * * and beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; * * *

An inspection of the exhibits in this case discloses that the merchandise consists of small glass beads, hexagonal in shape, which are strung on a thread; there are also two other threads which go along the outside of each bead and are so connected or crossed between each pair of the beads as to maintain all of them in a fixed and permanent position, equidistantly spaced along the thread. The merchandise, as appears by the record, is imported in the form of spools or hanks, each containing a length of 144 yards of the article in question.

The lower court held that the merchandise in question, in its imported condition, is only a material to be used in the manufacture of a trimming or other articles of merchandise, and that it is not in and of itself a trimming as classified by the collector, but is dutiable as beads under the first clause of said paragraph 1403.

The first question to be considered is whether the merchandise is in fact beads within the meaning of said first clause of paragraph 1403.

It appears from the testimony that the merchandise appears upon the invoice under the designation of "bead schlung."

Joseph W. Frankel, a witness for the importer, testified concerning the character of the merchandise as follows:

Q. How is this ordered, under what name, and sold?—A. Beads, schlung beads.

Q. Schlung beads?—A. Schlung, and also slung, some people call it slung.

Q. Does it consist of anything more than beads through which several threads are drawn?—A. No, sir; nothing more.

On cross-examination the witness testified:

Q. How does this black string which is marked "Exhibit 1" differ from a regular string of beads; what is there about that that distinguishes it from the regular string of beads—the way they are strung?—A. Why, this is what they call "slung," and there is some kind of a machine on the other side by which they sling them, just draw them through.

Q. How does that differ from the regular string of beads?—A. You mean a necklace?

Q. Yes.—A. A necklace is entirely different; it is strung; it is not strung on one side; it is strung through the center. You will notice all these lie with the beads exposed on the top, and on the bottom you have got the thread.

Q. And divisions between each one?—A. There are divisions; yes.

An inspection of the beads in question before us as Exhibit 1 shows that the witness was not entirely accurate in his description of the merchandise. There are three threads, only one of which passes through the beads. The other two pass on the outside of the beads in such a way as to hold them at equal distances apart, and to leave the top of the beads exposed with the single thread running through them at the bottom. It is clear to us that this merchandise is more than "beads" or "strung beads." It is an article composed in chief value of beads, intended and designed to be applied, in the condition

imported, after cutting to the required length, to some other material for purposes of ornamentation.

Even if the lower court be correct in its holding that the merchandise is material to be used in the manufacture of a trimming or other articles of merchandise, and is not in and of itself a trimming, it would not be beads, but an article composed in chief value of beads, and would be dutiable at 60 per centum ad valorem under the provisions of paragraph 1403.

This view is sustained not only by an inspection of the sample of merchandise before us, but by the oral testimony as well. The testimony is that they were invoiced as "Bead Schlung"; that they were known in the trade as "schlung" or "schlung beads," because of the way the merchandise was made; and we think that the testimony fairly shows that the merchandise as imported is used solely either as material for making trimmings, as appellee claims and the lower court held, or for that purpose and for trimmings as well, as the Government claims. Under either contention, the merchandise is more than beads and is an article composed in chief value of beads.

The next question is whether the merchandise should be classified under paragraph 1430 of the Tariff Act of 1922 as trimmings at 90 per centum ad valorem, or under paragraph 1403 as articles composed in chief value of beads at 60 per centum ad valorem. Appellee in his protest has made an alternative claim of classification under said last-named provision.

The term "trimming" is defined by the lexicographers as follows:

Trimming, n. 1. Something added for ornament or to give a finished appearance or effect; that which embellishes or completes: (1) Material attached to a garment, etc., for ornamentation or effect. [*Funk & Wagnalls' New Standard Dictionary.*]

Trimming, n. 3. Anything used for decoration or finish; an ornamental fitting of any sort: * * * [*The Century Dictionary and Cyclopedia.*]

Trimming, n. 2. That which serves to trim, make complete, ornament, or the like; esp., necessary or ornamental fittings or appendages, as of a garment; * * * [*Webster's New International Dictionary.*]

If the merchandise in question is, in the condition imported, attached to dresses, etc., for ornamentation or effect, it falls within the definition of "trimming" and should be so classified.

If the oral testimony alone be considered, we should be inclined to sustain the lower court in its finding that the merchandise involved is not in and of itself a trimming as classified by the collector, but we must also consider, in determining this question, the exhibits placed in evidence upon the trial and now before us.

The oral testimony with regard to the use of the merchandise here involved is conflicting. The testimony for the importer is that, while the merchandise is used as a material in making dress trimmings, it is never used as a trimming in and of itself; that it is applied to

material by an embroidery machine in the same way that yarn and tinsel thread are applied. The Government's witness, upon the other hand, testified that the merchandise was used as trimmings on garments and in the same way that any other trimming would be. The court below evidently accepted the testimony of the two witnesses for the importer as entitled to greater weight than that of the Government's witness, who was an examiner at the port of New York and not engaged in the buying or selling of merchandise of the character here in question.

Appellee, however, offered in evidence a number of exhibits to illustrate the use of the merchandise, and the same were received as collective Exhibit A.

In the record we find the following in the testimony of said Frankel, one of the appellee's witnesses:

Q. Have you certain exhibits which indicate how the merchandise is used?— A. Yes, sir; those are the ones.

Q. This collection which you have here fairly represents the use to which the merchandise is put?—A. Yes, sir.

Mr. PUCKHAFER. I offer these in evidence as an illustrative exhibit. * * *

[The same were received in evidence and marked "Illustrative Exhibit A of this date.]

One of the samples contained in this exhibit appears to be a garment upon which an article similar to that which is here involved has been applied. An examination of the exhibit shows that the article has been attached to the surface of the garment by stitching the same to it. The "schlung beads" are so attached in straight and curved forms, following in part designs upon the garment, and in part forming separate designs. It is apparent that immediately before being applied to the garment they were in the same condition as when imported, except that the length required had been cut from the spool or hank, and the length so cut off is stitched to the garment by use of an additional thread. The "schlung beads" give a raised effect and clearly are purely ornamental. From an inspection of this exhibit we can not escape the conclusion that when this merchandise is applied to a garment it is a trimming within the common meaning of that word; and, as the exhibit was introduced by appellee to illustrate the uses of the merchandise here involved, we must hold that its use upon garments was an ordinary use. No commercial meaning of the term "trimming" different from its common meaning is claimed or shown.

This court has repeatedly held that in classification cases the sample is ofttimes a very potent witness. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029.

This evidence, we think, was not given due consideration by the court below and, properly considered in connection with all of the oral testimony, its finding that the merchandise involved is not "trim-

ming" is contrary to the weight of the evidence, and the protest should have been overruled.

The judgment of the United States Customs Court is *reversed*.