The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* HUDSON FORWARDING & SHIPPING Co. (No. 3338)[1]

---

[1] T. D. 44427.

hidden

United States Court of Customs and Patent Appeals, November 10, 1930

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Brown & Carter* for appellee.

[Oral argument October 14, 1930, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification of certain merchandise invoiced as "imitation lizard skin" and assessed for duty by the collector at New York under that provision of paragraph 907 of the Tariff Act of 1922 which reads as follows:

* * * waterproof cloth composed wholly or in chief value of cotton or other vegetable fiber, whether or not in part of india rubber, 5 cents per square yard and 30 per centum ad valorem.

The importer filed protest, claiming the merchandise to be a filled or coated cotton cloth under that provision of said paragraph 907 which reads as follows:

\* \* \* filled or coated cotton cloths not specially provided for, 3 cents per square yard and 20 per centum ad valorem; \* \* \*

The lower court entered judgment sustaining the protest, from which judgment the Government appeals.

The only question before us is whether the merchandise involved is "waterproof cloth" within the meaning of that term as used in the above-quoted provision of said paragraph 907. If it is not, the Government concedes that the judgment below should be affirmed.

At the trial, the witness for the importer identified two samples of the merchandise in question as representative of the importation, which were marked "Exhibits 1 and 2" and received in evidence. Both are in imitation of lizard skin, one being green in color and the other brown.

With reference to the composition of the coating or covering on the surface of the cloth, Mr. Gassman, a Government analyst, testified as follows:

Q. Did you examine the surface of this cloth with a view of determining what that coating on the surface is?—A. I did.

Q. What did you find it to be?—A. Cotton fibers.

Q. Stuck together with some sort of glue?—A. Stuck to the cotton cloth.

Justice FISCHER. What do you mean—superimposed on the cloth?

WITNESS. Yes, sir.

Q. Is it flock?—A. Cotton flock.

Q. You say it has been stuck on by some mucilaginous substance?—A. Yes; put on the cloth and the cloth has been impregnated with some material.

Q. Did you say fibers?—A. Yes, sir.

Q. On either side?—A. On both sides.

The lower court in its opinion stated:

While we are satisfied from the testimony herein that the cloth in question has undoubtedly been rendered impervious to water, or nearly so, by the application of the coating or covering above described so as to make it practically waterproof, we are also satisfied that the merchandise is not of the class known commercially as waterproof cloth within the meaning or intent of said paragraph 907, inasmuch as the cloth is evidently not used or sold for making waterproof garments or to serve any of the purposes of waterproof cloth, but is simply used to make into ladies' dress trimmings or ornaments.

The Government contends that the cloth is in fact waterproof cloth, according to the common meaning of those words; that appellee did not prove or attempt to prove commercial designation; that the use that the importer made of the merchandise is immaterial, and that the evidence submitted on behalf of appellee is not sufficient to overcome the presumption of correctness of the collector's dutiable classification.

The first question to be determined is whether all cloth which is impervious to water is, in a tariff sense, waterproof cloth unless more specifically provided for. We do not think that Congress intended that cloth which was not in its manufacture designed to repel or turn water in use, or cloth that is not suitable for such use, should be included in the term "waterproof cloth" found in said paragraph 907. If, in the manufacture of the cloth, its being rendered impervious to water is merely an incidental result, without any intent or design to make it waterproof for the purpose of repelling or turning water, and it is not suitable for such use, it is, in our opinion not "waterproof cloth" within the meaning of said paragraph.

We are aided in coming to this conclusion by the citations in the Government's brief, which we have carefully examined.

In the Summary of Tariff Information, 1921, the following is found:

Waterproof cloths are used for raincoats, auto tops, dress shields, infants' wear, in hospitals, and for many other purposes. Any cloth that is impervious to water, or that is substantially so and *intended to turn water*, may be classed as a waterproof cloth. [Italics ours.]

The same language is used in the Dictionary of Tariff Information (p. 132), issued by the United States Tariff Commission.

The Government's brief also quotes from said Dictionary of Tariff Information under the heading Filled or Coated Cotton Cloth, N. S. P. F., the following:

Among cloths falling under this clause are artificial leather made on a cotton base, book cloths, buckram and similar cloths stiffened for filling or coating and used for padding suits, "green cloth" used in artificial flower manufacture, tag cloths, imitation vellum, heavily sized shirtings, "near g'ass," and various other specialties.

We think all of the above indicates that "waterproof cloth," as those words were used by Congress, means cloth designedly rendered impervious to water or suitable for use as material for articles designed to repel water.

It seems to us that many of the articles mentioned in said Dictionary of Tariff Information under the heading of Filled or Coated Cotton Cloth * * * may in fact be impervious to water to the same extent as is the merchandise in question, especially some forms of artificial leather, "green cloth" and "near glass," but Congress nevertheless intended that they should be classified as "filled or coated cotton cloths not specially provided for."

We therefore hold that the words "waterproof cloth," as used in paragraph 907, include only cloths which were designed or intended in their manufacture to repel water, or which are suitable for use as material for articles designed to repel water.

The next question is as to whether the merchandise involved comes within the scope of "waterproof cloth," as above construed.

The classification of the collector is presumed to be correct, and therefore the burden was upon appellee to overcome such presumption by testimony making a *prima facie* case controverting the presumed facts. If such *prima facie* case be made by the importer, it becomes a matter of weighing the evidence, and the presumption of correctness attached to the finding of the collector is not to be regarded as having evidential value, and can not be weighed against the evidence challenging the correctness of his finding. *Morse Bros. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 553, T. D. 41432.

Did appellee, upon the trial, make a *prima facie* case controverting the finding of the collector? Mr. Fuge, a witness for the importer, testified that he was the office manager of appellee, and had been in its employ for 24 years; that the business of appellee was "makers of ladies' dress trimmings"; that he was familiar with the merchandise in question and that it was cut by appellee into strips and used for making dress trimmings. The witness identified samples of the imported merchandise made into trimmings, which samples were received in evidence. He also testified that, in addition to the use of the imported merchandise by appellee, he had made numerous sales of it; that the name applied to the merchandise was "lizard cloth," and that appellee's first importation of merchandise of this character was in 1926.

The witness further testified concerning the use of the imported merchandise as follows:

Q. Do you know of any use that has been made of this cloth outside of the trimming trade? A. No.

Concerning the character of the cloth itself, the witness gave the following testimony:

Q. Have you made any test of the cloth itself for the purpose of determining its waterproof qualities?—A. Yes.

The witness then testified that he had put water, and also benzine, upon the material. Thereupon Justice Fischer interrogated the witness as follows:

Q. Did you put the water on it?—A. We put water right on it, which you can see by this sample. There was water on and benzine. It gets wet right through.

By Mr. Klingaman:

Q. Why did you test it with benzine?—A. Because we had complaints from our customers regarding the material.

Q. What was the nature of the complaints?—A. Why, that the figure came off.

Q. Well, that still does not explain why you should use benzine in testing it. Why did you use benzine rather than something else?—A. We had complaints that the article did not wear on the women's coats, that the coating came off and we sent it to the dry cleaner.

Q. The benzine is used in dry cleaning; is that what you mean?—A. So far as I know.

Upon cross-examination, the witness testified as follows:

Q. Did you ever make men's coats out of this article?—A. No, sir; no garments whatsoever.

Q. Do you know whether it was ever used for making raincoats?—A. We import that article and use it only in our dress trimmings. We also sold it——

Q. Just answer my question.

Justice FISCHER. Do you know whether it was ever used for raincoats by anybody?

WITNESS. Not to my knowledge; no, sir.

Mr. KLINGAMAN. I would like to have the witness show to the court how he tested it with water.

Q. Will you demonstrate what this water test consisted of that you made?

*       *       *       *       *       *       *

(The witness places the Exhibit 1 over a cup and pours water over it and rubs it with a piece of cheesecloth.)

Justice FISCHER. Why do you rub it with that cheesecloth, why not simply pour the water on it?

WITNESS. The reason I do the rubbing is that the pattern comes off. We do that for the reason that the complaints we had——

Justice FISCHER. If you merely poured the water on and did not rub it?

WITNESS. It will stand on there for a while and gradually be absorbed.

We think that the foregoing testimony, together with our inspection of the samples of merchandise in issue, establishes that the merchandise when manufactured was not designed or intended to be waterproof. We think that before rubbing, as described in the testimony, it is practically impervious to water, but that that quality is a mere incident of manufacture, without any purpose of rendering it waterproof. We have examined the samples received in evidence and find that water does pass through those portions of the cloth rubbed by the witness as above described. We do not think that this would occur with any cloth designed in its manufacture to be waterproof, for cloth so intended to be waterproof would stand a reasonable amount of wear before water would pass through it.

Therefore, upon the point of whether the cloth in question was intended and designed in its manufacture to be waterproof, we think appellee has made a *prima facie* case to the contrary, overcoming the presumption attending the collector's finding.

We also think that appellee has made a *prima facie* case showing that the merchandise in question is not suitable for use as material for articles designed to repel water.

The testimony on behalf of the importer, standing alone, would not be sufficient to overcome the presumption arising from the classification by the collector that the merchandise was suitable for use as material for articles designed to repel water; but, taken in connection with the samples of merchandise, we think appellee has made a *prima facie* case overcoming said presumption. From an inspection of the samples alone, and considering the tests referred to, it is our

opinion that the merchandise is not suitable for such use because of the fact that a small amount of ordinary wear would destroy any qualities that it may have for turning or repelling water. The testimony as to the use actually made of the merchandise, and that the witness testifying knew of no other use than for making dress trimmings, tends to confirm this conclusion.

The appellee, having established a *prima facie* case controverting the collector's classification, both upon the question of purpose of manufacture and suitability for use of the merchandise as material for articles designed to repel water, the presumption in favor of the classification falls and is no longer in the case. It therefore becomes a matter of weighing the evidence in determining the facts upon which classification should be based.

The Government offered but one witness, and his testimony was confined to the structure of the merchandise in question, and to demonstrating that, in its imported condition, the cloth in question is practically impervious to water, which, as hereinbefore stated, we think is a fact. Therefore, the testimony introduced on behalf of appellee, establishing a *prima facie* case, is uncontradicted and we perceive no reason why such testimony should not control our decision.

We find that the merchandise in question was not, in its manufacture, rendered impervious to water with any purpose or design that it should repel water, and that the merchandise is not suitable for use as material for articles designed to repel water. Therefore, it is not waterproof cloth within the meaning of those words as used in said paragraph 907.

The Government insists that there is no evidence in the record that the merchandise was not commercially recognized as waterproof cloth. That is true, and appellee makes no claim of commercial designation. However, the rule is so well settled that it requires no citation of authority that the common meaning is presumed to be the commercial meaning and will be so applied unless and until a different commercial meaning is claimed and proved. Therefore, it was not necessary for appellee to prove the negative of commercial designation. Neither party claimed it upon the trial, and the presumption is that the common meaning of "waterproof cloth," as those words are used in said paragraph 907, is the same as their commercial meaning.

The Government assigns as error the overruling of objections to the admission of evidence upon the trial as to the use of the merchandise, and in overruling the objections of Government counsel that the importer's witness was not qualified to make the proper test as to the "waterproofness" of the merchandise. We find no error in these rulings.

The judgment of the United States Customs Court is *affirmed.*