UNITED STATES *v.* NATIONAL CARLOADING CORP., JAMES S. BAKER IMPORT CO. (No. 5046)[1]

United States Court of Customs and Patent Appeals, March 15, 1961

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alfred A. Taylor, Jr.*, trial attorney, of counsel) for the United States.

*Barnes, Richardson & Colburn* (*Hadley S. King* and *George R. Tuttle*, of counsel) for the appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

SMITH, Judge, delivered the opinion of the court:

The imported merchandise, consisting of certain steel hand tools in the form of pry bars either 12 or 14 inches long and having nail pulling claws and a hammering face portion were assessed by the collector with duty at the rate of 21 per centum ad valorem, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930 as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, for articles or wares, not specially provided for, composed wholly or in chief value of iron or steel. The importers claimed that the said mer-

---

[1] C.A.D. 767.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

chandise is properly dutiable at the rate of $11\frac{1}{16}$ cent per pound within the provision for crowbars in paragraph 326 of said Act as modified by the Torquay Protocol to said General Agreement, T.D. 52739.

The Customs Court, Second Division, sustained the protest (Abstract 64233) and the Government appealed. The only issue is whether the imported merchandise is properly dutiable as an article, manufactured, in chief value of metal or as a crowbar.

The competing provisions of the Tariff Act in pertinent part read as follows:

Par. 397, as modified by T.D. 54108:

Tariff Act of 1930<br>
paragraph 397<br>
Description of Products<br>
Rates of<br>
Duty C

Articles or wares not specially provided for, whether partly or wholly manufactured:

    \*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

    \*      \*      \*      \*      \*      \*      \*

Not wholly or in chief value of tin or tin plate:

    \*      \*      \*      \*      \*      \*      \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*) _____ 19% ad val.

Paragraph 326, as modified by T.D. 52739:

Blacksmiths' hammers, tongs, and sledges, track tools, wedges, and crowbars, of iron or steel_____ $11\frac{1}{16}$¢ per lb.

Resolution of the issue requires a determination of the meaning of the *eo nomine* provision for "crowbars" as this term is used in Par. 326 of the Tariff Act of 1930 as amended by T.D. 52739.

     The common meaning of the word "crowbar" is a matter of law to be determined by the court. In the case of *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319, the rule is stated as follows (p. 9):

\* \* \*. The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. \* \* \*

In *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388, the rule is stated:

It is well settled that the common meaning of a tariff term is not a question of fact, but a question of law. *United States* v. *Shalom & Co.*, 33 C.C.P.A. (Customs) 29, 35, C.A.D. 311; *Stephen Rug Mills* v. *United States*, 32 C.C.P.A. (Customs) 110, 115, C.A.D. 293; *United States* v. *Florea & Co., Inc.*, 25 C.C.P.A. (Customs) 292, 296, T.D. 49396.

In determining the common meaning of words, courts may receive evidence as to such meaning and as to the name to be applied to a given article in common acceptance, but such evidence is merely advisory to the court. Courts may consult dictionaries and other authorities and also draw upon their own knowledge of materials within the common understanding in making their determination of common meaning. *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 24, 30, C.A.D. 209; *United States* v. *John B. Stetson Co.*, 21 C.C.P.A. (Customs) 3, 9, T.D. 46319; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, 159, T.D. 42219. (p. 3)

Samples of the imported merchandise are before us as Exhibits 1 and 2. Exhibit 1 is a bar 14 inches in length having one end bent back upon itself and terminating in a claw. The other end is tapered and also terminates in a claw. Exhibit 2 is similar to Exhibit 1 but is 12 inches in length.

The testimony of appellees' witness Ole Engelseth was that bars like Exhibit 1 are used to open wooden crates as well as to pull nails. He testified that while such bars are sold under a variety of names "the common one used is 'crowbar'."

Appellant's witness, Charles Casey, described crowbars sold by the Ducommun Metals and Supply Co. and identified Exhibit A as a duplication of p. 267 of the catalog of this company which shows the crowbars sold by them. He stated that they varied in length and diameter from 36″ x ⅞″ to 66″ x 1½″ and that these were standard lengths and diameters throughout the industry and the trade. He testified also that the bar Exhibit 2, was not a crowbar and that he was familiar with a similar tool which had been on the market which was called a "box opener" and had the general characteristics of a "ripping tool." On cross examination, he elaborated on the reasons why he did did not characterize Exhibit 2 as a crowbar as follows:

XQ. In other words, referring to Exhibit 2, the fact that it is bent is a factor which causes you to say that it is not a crowbar?

A. One factor.

XQ. The other is that it is too short?

A. It is too short, it has two claws, a hammering surface; it has none of the classifications of a crowbar.

The witness Casey also testified on cross examination as to the differences between a crowbar and certain other bars as follows:

XQ. What is the difference between a crowbar and a carpenter bar?

A. A carpenter bar has a curved neck with a claw and a wedge on the end, set at a slight angle.

XQ. Do you know what a wrecking bar is?

A. It is practically the same, except it doesn't have quite the curvature; there is a little difference in it.

XQ. How about a ripping bar?

A. They can be used for the same thing.

XQ. So that a wrecking bar could sometimes be used for a ripping or carpenter bar?

A. That is correct.

XQ. And aren't some of the bars so similar in shape that they sometimes can be referred to as a crowbar, except as a pinch bar, and so forth?

A. They probably could be.

Both witnesses agreed with the definition of a "crowbar" from Webster's New International Dictionary, Unabridged Edition, 1934, as:

crowbar, noun: A bar of iron or steel, usually wedge-shaped at the point or working end and more or less bent, used as a pry or lever, etc.

The witness Casey stated however that "a crowbar is not bent on the end."

No reliance has been placed on the rule of commercial designation for the construction of the *eo nomine* provision for "crowbars" in paragraph 326, as modified, supra. The Customs Court was correct, therefore, in interpreting the term in accordance with its common meaning.

The *Illustrated Technical Dictionary* edited by Maxim Newmark, (1944), provides nomenclature which aptly describes the imported goods as follows:

pinch bar (tool). A tool, octagonal in section, with either one or both ends bent slightly. It is 18 to 36 inches long. One type of pinch bar is bent at both ends and has a pinch point at one end, a claw at the other. Another type is bent at one end, has a point at the offset end and a pinch point at the other. It is used in general as the crowbar is used; employed to pull spikes and to pry apart timber which has been nailed or spiked.

wrecking bar (carp). A tool, octagonal in section, with one end goose-necked with claws, the other offset with a pinch point. It varies in length from 12 to 60 inches. Its uses are much the same as the crowbar and pinch bar, and in addition it may be used for pulling large nails.

Other pertinent and helpful definitions are found in:

*Lockwood's Dictionary of Mechanical Engineering Terms*, London, 1913 p. 97.

Crow Bar, Crow or Pinch Bar.—A round bar flattened to a chisel-like expansion at one end, and used for raising a heavy weight through a short distance, for pinching trollies and wagons along a line of metals through a limited distance, and generally for the application of a large leverage for a temporary purpose.

Also in:

*Hawkins Mechanical Dictionary*, New York, 1909.

p. 171. Crowbar.—An iron bar, usually with a curved chisel point at one end, used as a lever or a *pinch bar* for handling heavy articles.

p. 400. Pinch Bar.—In railway service, a special crowbar with one end flattened

and bent to form the fulcrum and point of a lever; used to move a locomotive or cars for valve setting, etc., by successive applications between the tread of the wheel and the rail.

p. 454.   Ripping Chisel.—A chisel made to use as a prying lever, usually 18 to 24 inches long with the point slightly cranked; a short, sharp *crowbar*.

A further definition is found in *Knight's American Mechanical Dictionary*.   By Edward H. Knight, Boston 1876.   Vol I, p. 650.

Crow.  1.  An iron bar used as a lever; it had usually a bent end, which was frequently forked, and may have been named from its fancied resemblance to a beak.

The Customs Court referred to the definitions of crowbar found in *The Century Dictionary*, An Encyclopedic Lexicon of the English Language, as follows:

[1900]  crowbar, n.    A bar of iron with a wedge-shaped end, sometimes slightly bent and forked, used as a lever or pry.   Also called simply *crow*.

[1913]  crowbar, n.   A bar of iron with a wedge-shaped end, sometimes slightly bent and forked, used as a lever or pry.   Also called simply *crow*.

In the above definitions it will be seen that reference is made to the uses of all such bars as levers.   In addition some of the bars may be used for pulling large nails.

We agree fully with the following excerpt from the opinion of the Customs Court:

An examination of the official samples, the evidentiary value of which has long been recognized (*United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T.D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, T.D. 44029; *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995), in the light of the dictionary definitions of the term, convinces us that the subject articles are, indeed, crowbars.   We find, in the cited definitions, two attributes in particular which are common to all crowbars. These are that a crowbar is a bar of iron or steel and that it is used primarily as a lever or pry.   It is not disputed that the instant tool is a bar of iron or steel and that it is used primarily to pry open packing cases and the like.   Since other characteristics of a crowbar may vary, and it may be "more or less" bent, wedge-shaped, claw-shaped, or pointed, and weight and size are not material factors, we do not consider as detracting from this conclusion that one end of the subject article is bent at right angles to the bar, or that both ends are wedge-shaped and clawed, or that it is less than 24 inches in length, or that it is relatively light in weight.   In respects which are essential to its fitting the description of a crowbar, it is not found wanting.

Since we find the merchandise in issue to be a form of crowbar, we think this case is controlled by the well established rule that an *eo nomine* designation by name, without limitation, includes all forms of the article.   See *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625; *Nootka Packing Co. et al.* v. *United States*, 22 CCPA (Customs) 464, T.D. 47464.

For the foregoing reasons, we *affirm* the judgment of the Customs Court.

KIRKPATRICK, J., dissents.