to the collector's classification.   The protest is overruled.   Judgment will be entered in favor of the defendant.

(C. D. 594)

Aᴍᴇʀɪᴄᴀɴ Vɪsᴄᴏsᴇ Cᴏʀᴘ. *v.* Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs

United States Customs Court, Second Division

(Decided February 18, 1942)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector, Joseph E. Weil*, and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Kincheloe, Judge: The plaintiff filed this suit seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties on an importation of cotton cloth. Duty was levied on the merchandise at the appropriate rate according to the average yarn number and other statutory requirements contained in paragraph 904 of the act of 1930, and in addition thereto an additional duty of 10 cents per pound was levied on the warp threads contained in said cotton cloth, under the provisions of paragraph 924 of said act, upon the theory that the cotton contained therein has a staple of 1⅛ inches or more in length.

The plaintiff claims that said merchandise is not subject to the assessment of duty under paragraph 924, based upon the contention that the cotton contained therein has a staple of less than 1⅛ inches in length. The plaintiff raises no question concerning the regular duty assessed upon said merchandise under paragraph 904, but limits its claim to the duty assessed under paragraph 924 and to the cotton cloth designated upon the invoice as quality CX837x1C, and abandons its claim as to all other items on the invoice.

The record before us consists of 157 pages containing the testimony of eight witnesses, six of whom testified for the plaintiff and two for the defendant, and exhibits 1 and 1–A, and illustrative exhibits A to Q, inclusive, and exhibit 1–X. In view of the state of the record and the conclusion we have reached, we do not feel that any useful purpose would be served by setting out a detailed analysis of the evidence at this point, but we shall refer to the same as occasion requires. We have, however, carefully examined, considered, and weighed each and every item of evidence in the record.

In arriving at his classification of the merchandise herein and in finding that the staple of the warp yarns was 1⅛ inches or more in length the collector did not include in his consideration and determination the entire fabric and all parts thereof, in that he failed to include therein the weft or filling threads. The collector found that the warp yarns constituted 35.2 per centum of the weight of the cotton cloth, and also made an allowance in the weight of the warp yarns of 2 per centum for sizing.

Counsel for the plaintiff in his brief filed herein contends that in assessing a duty of 10 cents per pound under paragraph 924 on the cotton cloth herein, the cotton fibers contained in both the warp and weft or filling threads should be included and considered in order to determine the staple length of the cotton contained in the cloth as an entirety. As support for this contention counsel relies upon the congressional mandate contained in paragraph 903 (b), which reads as follows:

In the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, *the entire fabric and all parts thereof shall be included.* [Italics ours.]

It is clear that the Congress, in referring to "cloth" in said paragraph 903 (b) meant cloth such as or similar to that herein involved, and that in using the word "yarn" it referred to cotton yarn when imported as such and before such yarn had been manufactured into a woven cloth, such as are provided for in paragraph 901 (a) and (b). This intention is made entirely clear by reference to the congressional definition of "cotton cloth" contained in paragraph 903 (a) as follows:

The term cotton cloth   *   *   *   wherever used in this schedule   *   *   * shall be held to include all woven fabrics of cotton, in the piece   *   *   *.

Once Congress has defined a term the same is binding upon this court, and we are not at liberty to adopt and use some other or different definition of the term so defined. It is therefore entirely clear that when the Congress used the term "cotton cloth" in said paragraph 903 (b) it was referring to "cotton cloth" as it had defined the term in the preceding subparagraph, 903 (a), and not to "yarn," such as is provided for in said paragraph 901 (a) and (b). The foregoing furnishes no indication that the Congress intended to permit cotton yarns, when imported as such, to escape the additional duty of 10 cents per pound provided for in paragraph 924, and therefore the use of the word "yarn" in paragraph 903 (b).

It is conceded that the cotton cloth here involved consists of a warp and weft or filling yarn. Therefore the "entire fabric and all parts thereof" includes both the warp and the weft or filling yarn, and does not include only the warp yarn. In order for the collector to comply with the clear mandate contained in paragraph 903 (b), in classifying the present cotton cloth, he was required to include "the entire fabric and all parts thereof," and not having followed the congressional mandate his action was clearly erroneous. On the admission and concession that the collector in classifying the instant merchandise did not include "the entire fabric and all parts thereof," as a matter of law his classification was wrong, and all presumption in favor of his classification is overcome and disappears.

Counsel for the defendant contends that it has not been shown what method of measurement the collector employed in determining the staple length of the cotton contained in the warp yarn of the imported merchandise, and that consequently we are unable to determine whether the presumption in favor of his classification has been overcome. Our views, as heretofore expressed, indicate our disagreement with this contention, but if we should accept this

contention, defendant's illustrative exhibit M states the following with reference to the stapling of yarn in cotton cloth:

Two or three arrays (stapling 10 to 30 inches of yarn for each) should be made to insure a correct judgment of staple length. After representative threads of all different yarns in a cloth have been drawn (stapled on the board), each type of thread is judged to be under or over as the case may be. The weights of the *yarns* 1⅛'' or over are divided by the total weight taken, and the result expressed as percentage of yarn with a staple 1⅛'' or over.

If a *visual examination* of the array indicates a preponderance (50% or more) of the fibers are 1⅛'' or over, the yarn should be considered as 1⅛'' or over in staple. If the examination indicates less than 30% of fiber 1⅛'' or over, the yarn should be considered as less than 1⅛'' in staple. [Second italics ours.]

Illustrative exhibit M, from which the above is quoted, is referred to in the record as "Pamphlet No. 216," and which witness Gassmann testified he compiled after certain research work. He testified that the result of his research went to collectors of customs all over the United States, and that said pamphlet was issued for their guidance. When asked what research he made as a basis for the issuance of this authoritative pamphlet, he answered: "We didn't make any special research." The witness testified, however, that "This pamphlet purports to be the authoritative method for stapling cotton cloth."

All Government officials are presumed to follow instructions. Therefore, if pamphlet No. 216 purports to be the authoritative method for stapling cotton cloth and was issued and sent to collectors of customs all over the United States for their guidance, it might well be presumed that the collector followed the instructions contained in pamphlet No. 216 in classifying the instant merchandise. Since it has been definitely shown that the collector's classification of the instant merchandise was erroneous, in that in making his classification he did not "include the entire fabric and all parts thereof," our remarks regarding the collector following the instructions contained in pamphlet No. 216 are made solely for the purpose of showing that there is a strong indication that the collector also erred in determining the staple of the cotton contained in the warp yarn by a *visual examination* of the array of fibers, it having been held that a visual examination does not produce results as accurate as an actual measurement. *Morse Bros.* v. *United States*, 13 Ct. Cust. Appls. 553, T. D. 41432, and *United States* v. *General Rubber Co.*, 22 C. C. P. A. 308, T. D. 47350.

Counsel for the plaintiff in his brief filed herein also contends that in determining whether the 10 cents per pound duty under paragraph 924 is applicable, the customs officials should not consider the staple length of the raw cotton before manufacture, but should consider only the fibers in the manufactured cotton articles in their condition as imported.

In considering this contention we quote paragraphs 16 and 17 of the Emergency Tariff Act of 1921:

16. Cotton having a staple of one and three-eighths inches or more in length, 7 cents per pound.

17. Manufactures of which cotton of the kind provided for in paragraph 16 is the component material of chief value, 7 cents per pound, in addition to the rates of duty imposed thereon by existing law.

For the purpose of comparison we quote paragraph 924 of the present act:

All the articles enumerated or described in this schedule (except in paragraph 922) shall be subject to an additional duty of 10 cents per pound on the cotton contained therein having a staple of one and one-eighth inches or more in length.

In the *Morse* case, *supra*, the appellate court, in holding that the staple should be taken of the original cotton and not of the fibers found in the imported manufactured article, said:

In the enactment of paragraph 17 Congress intended that if the component material of chief value of the importation was of cotton, and that if that cotton, before it was made into the cloth, had a staple length of $1\frac{3}{8}$ inches or more, then the cloth should bear the additional duty of 7 cents per pound.

In view of the language construed by the appellate court in the *Morse* case, *supra*, we are in entire agreement with their holding in the above quotation. In view of the definite language of paragraph 17 we are unable to see how the court could have reached any other conclusion than that the manufactured article was subject to the additional duty of 7 cents per pound if the raw cotton of which such article was made had a staple of $1\frac{3}{8}$ inches or more in length. The additional duty provided for in paragraph 17 was made to depend entirely upon and was governed exclusively by the condition of the cotton as provided for in paragraph 16, and paragraph 16 provided for the staple of raw cotton.

The language of paragraph 924 is quite different from that contained in paragraph 17. Had paragraph 924 provided for—

All articles enumerated or described in this schedule shall be subject to an additional duty of 10 cents per pound on the cotton contained therein of the kind provided for in paragraph 783

—then we would have two analogous provisions, but in the enactment of paragraph 924, the Congress did not see fit to employ language the same or similar to that used in paragraph 17. In paragraph 924 the additional duty is made to depend entirely upon the length of the staple of the cotton "contained therein," and not upon the staple of the cotton of the kind provided for in paragraph 783. There is no raw cotton contained in the imported merchandise. The only cotton "contained therein" is manufactured cotton, and it is the

cotton "contained therein," and not the cotton provided for in paragraph 783, upon which the Congress made the additional duty to depend. It is therefore clear that the additional duty provided for in paragraph 924 is made to depend upon the length of the staple of the cotton as it appears (therein) in the imported merchandise, and not upon the staple of the raw cotton from which the articles were manufactured, of the kind provided for in paragraph 783.

Moreover, another strong, if not conclusive, indication that Congress intended that the staple of the cotton should be determined by its length in the cloth and not the staple length of the raw cotton from which it was made, is the fact that in the enactment of paragraph 924, Congress did not levy the same rate of duty on the staple length of the cotton contained therein having a staple of 1⅛ inches or more in length as it did on the raw cotton in paragraph 783. It levied a duty of 10 cents per pound on the cotton in the cloth having a staple of 1⅛ inches or more in length and only 7 cents per pound on the raw cotton in paragraph 783, which clearly shows that Congress knew that the staple length of the cotton in the cloth would necessarily be some shorter than the staple length of the raw cotton from which the cloth was made, and so put a higher rate of duty on the length of the staple in the cloth in order to procure a just and correct compensatory duty on the cotton cloth.

Not so in the enactment of the Emergency Tariff Act of 1921. In that act the rate of duty on the raw cotton having a staple of 1⅜ inches or more was levied at 7 cents per pound, and also 7 cents per pound on the cotton in the cloth, clearly indicating in that act that it intended to levy the duty on the staple length of the raw cotton which went into the cloth and not on the staple length of the cotton contained in the cloth. To our minds this seems a clear and correct distinction.

In view of the fact that the final decision may turn upon the question of the proper method to be used in ascertaining the staple length of the cotton contained in the imported merchandise, we will now consider that question. While the decision in the *General Rubber Co.* case, *supra*, rested upon a finding that the plaintiff had not overcome the presumption of correctness in favor of the collector's classification, there are statements in the opinion which quite definitely show that the actual measurement method and not the visual examination or comparison method is correct, which we quote as follows:

\* \* \* The disputed question in these cases is as to the proper method to be employed in the ascertainment of the staple length. \* \* \*

At this point it may be important to note that in neither the Cotton Standards Act nor in the Tariff Act of 1930 is there any requirement or suggestion that the

official cotton types are to be used in any way in determining staple length for customs purposes.

\*      \*      \*      \*      \*      \*      \*

\*   \*   \*   Since both sides agree that the uneven ends should be disregarded, it is difficult to understand how it may be logically claimed that applying the rule in measuring the distance between the blocked-off ends can produce an inaccurate result. *It is our view that any estimation or comparison of the portion which lies between the blocked-off ends which produces a result different from actual measurement would be an incorrect result.*  [Italics ours.]

Of course the *actual measurement* of the fibers to determine the staple length of the cotton is the only true and correct method which should be employed when there is a *dispute* as to its staple length. A *visual examination* of the fibers could not possibly determine the true staple length in such close and contested cases.   A length of $\frac{1}{32}$ of an inch or less may be involved.

Therefore, if it should be held that the collector in classifying the imported merchandise was presumed to, and did actually follow the instructions to him contained in pamphlet No. 216, and thereby determined the length of the staple of the cotton in the imported merchandise by a visual examination or the comparison method, the above quotations from the *General Rubber Co.* case clearly show that he was again in error.   In the decision of this case the reasons why the collector's action was wrong are immaterial.   This is a matter with which we are not concerned.  If his action was wrong it was wrong, and no amount of reasoning, plausible or otherwise, why the collector acted as he did will make his action correct.   Therefore, the only question remaining for our determination is whether or not the plaintiff has established by the weight of credible evidence the correct length of the staple of the cotton as contained in the imported merchandise, and has shown that such staple length is less than $1\frac{1}{8}$ inches.

In establishing his case, counsel for the plaintiff offered the testimony of Alfred E. Davieau.   This witness has charge of what is known as the "mill service department" of the United States Testing Co.   This company does testing of textiles, fibers, yarns, and fabrics for all types, qualities, and widths for jobbers, retailers, and manufacturers.   They also make tests for the consumer, the United States Navy, the United States Army, and they do considerable check testing with the Bureau of Standards, the Department of Agriculture, and also with the Army and Navy, and according to the witness the company is one of the largest testing companies in the United States, and probably in the world.

This witness received a diploma in textile engineering from Lowell Textile Institute in 1916 and since that time the witness has followed his profession continuously, being employed by Cheney Bros. of South

Manchester, Conn., United States Navy Department, where he was required to draw up specifications for contract work, recommend award of contracts, and interpretations of test reports on textiles from various navy yards and the Bureau of Standards in connection with all textile materials of all types; and thereafter the witness has been employed by the United States Testing Co. The witness has for 17 years made several hundred tests each year of cotton yarns and cotton cloth to determine the staple length of the cotton contained therein. This witness also supervised all the tests made on the imported merchandise to determine the staple length of the cotton contained therein.

This witness further stated that in 1923 he assisted Dr. Hugh Byron Gordon in conducting a research to establish the staple length in fabrics. In conducting · this research the witness first obtained four samples of raw cotton and also the fabric manufactured therefrom. He then testified as follows:

\* \* \* Half of the raw stock which I obtained was submitted to the Department of Agriculture with the request that they establish the staple length of this raw stock. The other half was maintained for our research in the laboratory. From this raw cotton, pulls of fibers were prepared similar to the method followed by expert staplers, each pull containing 500 fibers. From these pulls, 500 individual fibers were measured, all fibers being measured whether they were very short or extremely long. The total measurement of the 500 fibers was obtained and then divided by 500 and the average length of the fibers was thereby ascertained. In the four instances on the raw cotton, it was found that by using this method the staple length obtained checked with the results of the United States Department of Agriculture, within possibly one thirty-second of an inch in two instances, and exactly in two instances. The next step was to take the fabrics which were manufactured from this cotton for the research. The fabrics were first treated so as to remove any sizing material which might have been present on the fabric. The next step was to untwist the yarns very carefully and prepare small wisps of cotton fibers for measuring. Extreme care has to be used in preparing these wisps in order that no fibers are broken. Having prepared these wisps, it is then necessary to measure the individual fibers. Five hundred fibers were measured, sufficient wisps being used to make up this total number of fibers. Each and every fiber was measured, regardless of its length, whether three-sixteenths of an inch in length or one and a half inches. No fibers were disregarded at all. The next step was to total up the individual lengths and ascertain the average length. In the four instances, it was found that the average length of the cotton fibers in the yarns taken from the fabric was five thirty-seconds of an inch below the staple reported by the Department of Agriculture. \* \* \*.

We further applied the method which was developed by Doctor Gordon in 1923 to this subsequent research, and the results show that the Gordon method, by using the Gordon method, we go back again to the staple as reported by the Department of Agriculture, thereby finding that the research originally done by Doctor Gordon to be correct. The advantage of this new research is that we can bring out further deductions. It is possible from this subsequent research

to ascertain the average length of the fibers within any given yarn or fabric, and by plotting a cumulative curve it is further possible to determine the percentage above and below any specific length of fiber. Those two factors could not be obtained from the original research concluded by Doctor Gordon in 1923. And in connection with this research, I would like to say that I consulted the bound copies of the Textile World, and the Journal of the Textile Institute for the last twenty years, and also the publications of the Bureau of Standards on research for the last twelve years, and I was unable to find any other research along this line.

An article from The Textile World, 1923, was admitted in evidence as illustrative exhibit G, as showing what the witness described as the "Gordon method."

As to the method employed in determining the length of the staple of the yarn in the imported merchandise the witness stated:

The method used in arriving at this conclusion was to *measure each and every fiber, disregarding no fibers at all*. The measurements were made under controlled conditions, at a temperature of 70 to 72 degrees Fahrenheit, and a relative humidity of 65 per cent. Actual measurements were made by taking individual fibers, placing them on a glass plate which had been placed over a graduated scale divided into sixteenths of an inch, straightening out the fibers with the aid of the rubbers on two pencils, and then *measuring the individual lengths*. [Italics ours.]

The testimony of witness Holgate, the man who actually made the tests on the imported merchandise under the direct supervision of the former witness, shows that he followed strictly the methods outlined by witness Davieau, as a result of which he found that the staple length of the warp thread in the imported merchandise was $^{29}\!/_{32}$ of an inch. The witness stated that he also tested the weft or filling thread for the purpose of determining the length of the staple contained therein and that "The procedure was exactly the same as that used to determine the staple length in the warp," and that he found the staple length therein to be $^{21}\!/_{32}$ of an inch.

The plaintiff also offered the testimony of George Sherman Monroe, who is the director in charge of the laboratory operations of the Better Fabrics Testing Bureau. The witness stated that he had for the past 10 years been making from fifty to one hundred tests per year in determining the staple length of cotton in cotton cloth. After subjecting a sample of the imported merchandise to tests employing essentially the same methods used by witnesses Davieau and Holgate, the result showed the staple length of the warp yarns to be $1^{1}\!/_{32}$ inches.

The testimony of these three highly-qualified expert witnesses is sufficient to show that the staple length of the cotton contained in the warp thread of the imported merchandise is less than $1\frac{1}{8}$ inches, and consequently that the staple length of the cotton contained in the entire fabric and all parts thereof is less than $1\frac{1}{8}$ inches. Since it is

admitted that the staple length of the weft or filling thread is less than 1⅛ inches, it is obvious the staple length of the cotton in the entire fabric and all parts thereof could not be greater than the greatest staple length in any one of its parts.

However, the plaintiff not only showed by witnesses Davieau and Holgate, as hereinbefore set out, that the staple length of the cotton as imported in the weft threads was less than 1⅛ inches, but by the same witnesses it was established that the staple length of the raw cotton of which the warp and weft or filling threads are composed was less than 1⅛ inches when taken separately and also when the two threads are combined.

Witnesses Davieau and Holgate in making their tests to determine the staple length of the warp yarns, the weft yarns and the warp and weft yarns combined, as the fibers thereof appeared in the raw cotton, used the "Gordon method," which is the same method that was used in stapling the cotton in the cloth in the *Morse* case, *supra*. Concerning the "Gordon method" the appellate court, in the *Morse* case, *supra*, observed:

> While there is no recognized method of determining the staple of cotton after it is manufactured into cloth, Congress must have contemplated that some means could be devised for determining this fact. The testimony of the witnesses for the importers discloses a method used by them, which seems to be a reasonably fair one, and, while not capable of producing absolute accuracy, it would seem to be reasonably calculated to produce the result desired by Congress. * * *

In the instant case we not only have a determination of the staple length of the cotton from which the imported merchandise was manufactured by use of the "Gordon method," but we also have a determination of the length of the staple of the cotton as it appears in the imported merchandise by use of what may be termed the Davieau method, which appears to be equally as reliable and accurate as the Gordon method, and by both methods it is shown that the staple of the cotton in the raw cotton and in the cotton cloth as imported is less than 1⅛ inches in length.

The only method shown by this record to have been used by the defendant herein in determining the staple length of the cotton was the visual examination or comparative method. As to the method used by the Government, as testified to by witness Gassmann, it is our view that any estimate or comparison which produces a result different from actual measurement would be an incorrect result. It may also be important to note here that in neither the Cotton Standards Act nor in the Tariff Act of 1930 is there any requirement or suggestion that the official cotton types are to be used in any way in determining the staple length of cotton in imported cotton cloth for customs purposes.

In determining the length of the staple in the warp yarn the witness Holgate stated that there were 36.17 per centum of the fibers $1\frac{1}{8}$ inches or over and 63.83 per centum of the fibers under $1\frac{1}{8}$ inches in length. This shows that the fibers less than $1\frac{1}{8}$ inches in length clearly preponderate. Although witness Slade testified for the Government that he never used the term "staple length" in applying it to cotton which has been manufactured, he also admitted that he had never stapled cotton after it had been manufactured; all his experience had been limited to stapling raw cotton, and that he had never even witnessed the methods used by Mr. Davieau and Doctor Gordon. While witness Slade is unquestionably an authority on the stapling of raw cotton, his admission that he had never stapled cotton after it had been manufactured, that all his experience had been limited to stapling raw cotton, and that he had never even witnessed the methods employed by Mr. Davieau and Dr. Gordon for determining the staple length of cotton after it had been manufactured, renders valueless any testimony given by this witness in this case. Furthermore, there is no evidence before us that witness Slade made any examination or test to determine the staple length of the cotton in the imported merchandise. In view of his admissions, the reason for this witness not having made an examination or test of the imported merchandise is apparent.

The careful, painstaking, and exhaustive methods employed by the plaintiff's witnesses in selecting, testing, and *measuring* the staple length of the cotton contained in the warp thread and in the weft thread and in a combination of the two, and also in the raw cotton from which the imported merchandise was manufactured, and the accuracy of the results obtained, clearly overcome any presumption in favor of the classification of the collector, regardless of the method he used and whether he considered the entire fabric and all parts thereof, or only a portion thereof. The plaintiff's evidence also definitely establishes that whether the staple length of the warp yarn alone be taken, or whether the warp and weft yarn combined be taken in the cloth as imported, or whether the staple length of the raw cotton in the warp and weft yarns be taken together or separately, the length of the staple of the cotton is less than $1\frac{1}{8}$ inches.

Counsel for the plaintiff makes many contentions in his brief filed herein which are not necessary to a decision of the question presented in this case, and therefore no attempt will be made to answer the same in this opinion.

After a careful consideration of the entire record in this case, and on the facts and law as hereinbefore set out, we hold the staple length of the cotton contained in the cotton cloth designated upon the invoice as

quality CX837x1C to be less than 1⅛ inches, and therefore that said item is not subject to the additional duty of 10 cents per pound imposed by paragraph 924 of the act of 1930.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.