CAREY & SKINNER, INC. *v.* UNITED STATES

**No. 5975.**—Invoice dated Fort Erie, N. Ontario, April 29, 1940.
Entered at Peace Bridge, Buffalo, N. Y., April 29, 1940.
Entry No. 5805.

First Division, Appellate Term

(Decided January 12, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney),
for the appellee.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: Irving Air Chute Incorporated of Buffalo, N. Y.,
imported in April 1940, from its subsidiary, Irvin Air Chute Limited
of Fort Erie, Canada, a shipment of braided silk cord which the domes-
tic corporation entered at an aggregate value of $5. The merchandise
was appraised in June 1941, on the basis of cost of production, section
402 (f) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402), the
entered value being advanced to $10.35, Canadian currency, per gross
yards, net packed, resulting in an appraised value of $475, entailing
an increased duty of $427.50 and an additional or penal duty in the
sum of $325.25.

The importer appealed for reappraisement; and the court below, in
its decision reported in Reap. Dec. 5896, sustained the appraised value.
The case is now before us as an application for review of said decision,
having been filed pursuant to the provisions of section 501 of the
Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501), as amended by the
Customs Administrative Act of 1938, published in T. D. 49646,
which says in part, that we "shall consider the case upon the samples
of the merchandise, if there be any, and the record made before the
single judge, and, after hearing argument on the part of any of the
interested parties requesting to be heard, shall affirm, reverse, or
modify the decision of the single judge or remand the case to the
single judge for further proceedings, * * *."

The appellant, plaintiff below, has assigned 12 errors under rule 38
of this court, as amended in T. D. 49308. Our view of the case
sustains a number of the errors assigned, but we will discuss them in
general, not deeming it necessary to dispose of each in order.

Keefe, J., who heard the case as the single judge, presented, in his opinion, a clear, concise, and correct statement of the facts of record. It is unnecessary, for our purpose, to restate a summation of those facts at any great length. The record discloses, Judge Keefe so found, and we think the parties concede, that the merchandise in question was imported in a carton, two-thirds filled with short ends, *averaging* from 6 to 12 feet but containing some pieces *28 to 51 feet* long; that the silk cord as originally manufactured is produced in continuous lengths of 540, 680, 780, or 1,020 linear feet; that its sole use is as parts of parachutes; that the shortest piece so used is 30 inches, which is employed to attach the pilot chute to the parachute; that the shortest continuous cord that is purchased is 54 feet; that in fitting the different lengths to parachutes the cords are stretched and there are always scrap ends of various lengths remaining; that neither the Canadian exporter nor the American importer has ever been able to find an outlet for these scrap ends; that, prior to the present importation, they were disposed of either by burning or discarding as rubbish; that the instant merchandise, consisting of such scrap ends, was ultimately disposed of as waste, having no practical use. The statement by the lower court that "the shortest length used in parachutes is 30-inch pieces to attach the pilot chute to the parachute" might draw the inference that such lengths are peculiar to that usage and require separate manufacture. So there will be no misunderstanding about the said finding, the record clearly shows that those short pieces are always derived from the ends of regular standard lengths, hereinbefore discussed.

The manager of the exporting corporation in Fort Erie, Canada, when asked why he made the shipment in question to the parent corporation in Buffalo, testified as follows:

Q. Why did you make this shipment to the Irvin Parachute Company?—A. Just through a conversation I had with Mr. Rogers in Buffalo. Previous to us getting busy, we always burned it up. He said something about giving it to the boy scouts here, so I thought we would start saving it and sending it over.
Q. To give to the Boy Scouts?—A. Yes.

There is no denial of this statement that the odds and ends of silk cord in question were saved instead of burned, and that they were not thrown in the rubbish pile in Canada but exported to the appellant for prospective use by Boy Scout organizations. Neither is there any testimony to show any other use whatsoever to which the merchandise before us was to be put in this country.

At this point, it is pertinent to quote from Judge Keefe's opinion, wherein he said:

It is true that the imported material, according to the uncontradicted evidence, was worthless and had no commercial value, and was discarded upon importation. However, it has long been held that all imported merchandise for customs pur-

poses must have some value. The basis of such value of imported merchandise, under section 402, Act of 1930, shall be the foreign value, or the export value, whichever is higher. In the absence of either of such values the United States value is to be taken, but where there is no such value, the basis of appraisement shall be the cost of production. It is indeed unfortunate that the shippers of the merchandise herein or the importers failed to ascertain the perils awaiting the introduction into this country of valueless merchandise. Under the law, however, no relief may be granted by this reappraisement court.

We differ with the trial judge that "no relief may be granted by this reappraisement court." At the outset, it can be stated that the record presents a clear statement by counsel for appellant in agreement with the paragraph just quoted from the opinion of the lower court, followed by competent proof establishing that no foreign, export, or United States value, existed at the time of exportation of the present merchandise, and that it had no substantial value.

At the hearing before the trial judge, plaintiff called the appraiser as a witness, who testified that the basis of his appraisement was cost of production and that such value was obtained from "Foreign investigation reports." This important testimony was received without objection by defendant. In fact, none of the exceptions to the rulings made during the conduct of the trial is pressed in either brief before us. Toward the conclusion of the appraiser's testimony, the witness, who was the first called by plaintiff in presenting its case in chief, was asked to produce the foreign investigation reports which had been requested, in addition to the information supplied by the Customs Information Exchange (plaintiff's exhibit 1). Government counsel objected to the question, and in arguing the objection which was sustained by the court, counsel stated:

These reports constitute part of the Government's case. The Government, under section 501 of the tariff act, is protected against just such procedure. They are given a statutory presumption of correctness attached to the appraised value. If plaintiff, by its own evidence, makes a *prima facie* case, so that the Government is required to produce its own evidence, then under the ordinary rules of procedure the Government will of course produce such reports, but for plaintiff to come in with witnesses in the courtroom, constituting his own evidence, and attempt to draw out the Government's evidence before he puts in his own case, is contrary to the rules of procedure.

This attitude by defendant before the court below makes it clear that the Government, after plaintiff's proof had been offered, recognized the necessity of producing some substantial evidence, and did so by offering the reports alluded to, constituting the only evidence introduced by the Government.

At the conclusion of plaintiff's case, defendant made no motion to dismiss the appeal for failure to establish any statutory dutiable value, but proceeded to support the appraiser's action by offering customs agents' reports, which were admitted in evidence as defendant's exhibits 6, 7, 8, and 9. If such a motion to dismiss had been presented,

it would have required serious consideration in the light of the affirmative proof adduced by plaintiff. In the absence of the motion, it becomes proper to discuss the reports of the Treasury representatives. (*United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, T. D. 46057.) They are part of the record before us, free from any objection as to their admissibility. Hence, the evidence herein contains not only appellant's criticism of the appraisal made in this case, but also the testimony of the appraiser and the documents upon which he based his finding, or the yardstick used by him in arriving at his initial appraisement, the very action which is under scrutiny here.

The foregoing record made before the single judge discloses a serious error which, in our opinion, nullifies the official appraisement. The imported merchandise, as herein above stated, consisted of a carton of odds and ends of silk cord, resulting from the recognized commercial lengths after the latter had been used in the manufacture of parachutes. In adopting cost of production as the proper basis for appraisement of these scrap or waste ends of silk cord, it was incumbent upon the appraiser to find such value in accordance with the statutory definition thereof set forth in section 402 (f), *supra*, as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The procedure followed by the appraiser in his finding of such value is stated in the opinion of the single judge as follows:

From the evidence before us it appears that the appraiser had adopted the price of $10.35 Canadian as the cost of production of the cord in question. The actual production costs amounted only to $9.84 not including the profit of the manufacturer, which was not obtainable; that a selling price of $11.35 per gross yards included the profit, as well as other expenses, and that lengths of 54 or 57 feet or "seconds" were sold at a reduction of $1 Canadian per gross yards, or $10.35 per gross yards. Therefore the appraiser in adopting the price of $10.35 per gross yards, the selling price of random lengths, included the difference between the selling price and the production costs as profit. We fail to find any evidence

before us establishing that such profit was greater than the profit allowable under section 402 (f) (4).

The above quotation is not an accurate review of just what the appraiser did. The production cost of $9.84 referred to was obtained from customs agent's report, defendant's exhibit 7, which very clearly indicates that this figure relates *not to scrap ends*, but to braided silk cord in lengths of 680 feet made of "a special type of braid manufactured according to specifications of the Air Chute Co." The said report specifically states that the amount applies to an order, dated February 26, 1940, approximately 2 months prior to the date of exportation of the instant merchandise, which order "called for 3,500 skeins of silk cord in lengths of 680 feet, at (Can.) $11.35 per gross yards," and had no reference to silk cord similar to the imported product. The same report further states:

> The difference between the manufacturing cost of $9.84 and the selling price of $11.35 represents gross profit which includes selling expenses and certain administrative expenses. A break-down of this difference to show actual net profit was not possible.

The value adopted by the appraiser is one dollar less than the *selling price*, $11.35, of skeins of commercial lengths of the braided silk cord. His price of $10.35 used on appraisement was developed in accepting the following information contained in the customs agent's report, defendant's exhibit 6:

> Mr. Buck [assistant to the president of the Canadian manufacturer] stated that the practice has been for Irving Airchute Company Limited to contract for a quantity of braided silk cord to be supplied at a definite figure per gross yards; further, that the contract carried a provision whereby random lengths (Mr. Buck refers to such lengths as "seconds") *would sell at a price of $1 per gross yard less than the full length skeins.* [Italics ours.]

The random lengths of so-called "seconds" referred to are not such or similar to the merchandise in question. They are evidently susceptible of some practical use, ranging in length from 54 to 57 feet. The importation under consideration was a waste, consisting of odds and ends of scrap, concededly of no commercial value, average pieces being 6 to 12 feet, and the longest running to only 51 feet. No stretch of the imagination will permit an association of the one product with the other to supply the essential of similarity, as that term has been judicially defined. *United States* v. *Irving Massin & Bros.* (16 C. C. P. A. 19, T. D. 42714); *United States* v. *Kraft Phenix Cheese Corp. et al.* (26 C. C. P. A. 224, C. A. D. 21).

Even if we were to adopt the conclusion that the random lengths or "seconds" and the instant merchandise were similar—even then, the appraised value could not be accepted as the proper basis for appraisement because it is not the *cost of production* of any merchandise, but is the result of a calculation from the *selling prices* of

two commercial products wholly different from the goods before us. The entire method followed by the appraiser, influenced, as it was, by the customs agents' reports, reveals an utter disregard of the requirements of the statute, section 402 (f), *supra*, in his determination of what he testified to be cost of production of the merchandise.

The conclusion by the trial judge that "I am constrained to adopt such value [appraised value] as the value to be used as the basis of duty" suggests that it was evidently the desire of the lower court to defeat a most unreasonable imposition, as we find in this case, but felt that there was no other alternative than to sustain the appraiser's finding when the plaintiff failed to establish its claimed value.

The presumption of correctness with which the action of the appraiser is clothed by statute (section 501, *supra*) is rebuttable. It has no evidentiary value (*Morse Bros. (Inc.) v. United States*, 13 Ct. Cust. Appls. 553, T. D. 41432). It lacks the force of finality. If this were not the condition that surrounds the office of presumption, there was no reason for the entire basis of the appraiser's action, in the form of reports of investigations in the Canadian market, being offered by the Government as its case. When the record in a case, as the one before us, discloses that the appraisement is based on a wrong or false premise its statutory presumption is destroyed.

Thus we are confronted with a record in which the appellee has failed to establish a dutiable export value, as claimed, and the appraisement is shown to be based on a wrong premise. The latter is not null and void but is an erroneous appraisement. The distinction between the two was very clearly and succinctly expressed in *G. & H. Transport Co., Inc. v. United States*, 27 C. C. P. A. 159, C. A. D. 78, as follows:

> There is a clear distinction between a null and void appraisement and an erroneous appraisement. *United States v. F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126. A null and void appraisement is one where the mandatory provisions of the pertinent statutes have not been complied with; an erroneous appraisement is one where the mandatory provisions of the statutes have been complied with but the appraiser has made some error in judgment. In the instant case the mandatory provisions of the statute have been complied with. The appraisal was not null and void.

That language is equally applicable here, and the proper disposition of this case, prior to enactment of the Customs Administrative Act of 1938, *supra*, would have been to dismiss the appeal in which event "the case would have stood as if no appeal had been taken and the appraisement made by the local appraiser would again have become vital and effective," *United States v. F. B. Vandegrift & Co.*, 16 Ct. Cust. Appls. 398, T. D. 43120.

The instant case, however, is subject to the requirements of the said Customs Administrative Act of 1938, which provides that the

single judge "notwithstanding that the original appraisement may for any reason be held invalid or void," as we conclude herein, shall determine the value of the merchandise. What, if any, additional testimony on the question of value is available we, of course, do not know, but the case should be reopened for such additional proof as the trial court finds necessary to determine proper dutiable value.

We are constrained, therefore, to reverse the judgment of the lower court and remand the case to the single judge, for the reasons stated herein, for further proceedings. Judgment will be rendered accordingly.