(C. D. 1622)

DAVIES TURNER & COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 14, 1954)

*Wallace & Schwartz (Barnes, Richardson & Colburn* by *Edward N. Glad* and *Joseph Schwartz* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*William J. Vitale, Joseph E. Weil,* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of furniture in the form of chairs, stools, tables, and chests of

drawers which was assessed with duty at the rate of 22 per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930, as modified by the Mexican Trade Agreement, T. D. 50797, for—

Bent-wood furniture, wholly or partly finished, and parts thereof.

The plaintiff herein contends that the furniture in question does not fall within the common meaning or trade understanding of the term "bent-wood furniture," and by its protest claims that it is properly dutiable under the provisions of paragraph 412, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 20 per centum ad valorem with respect to the chairs, and 12½ per centum ad valorem with respect to the furniture, other than chairs. Those provisions of paragraph 412, *supra*, as so modified, read as follows:

Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

| | |
|---|---|
| Chairs | 20% ad val. |
| Other furniture | 12½% ad val. |
| Parts of any of the foregoing | 20% ad val. |

It is the contention of the plaintiff that the term "bent-wood furniture" is limited to furniture in which the bent or curved parts are (1) made of wood, in solid pieces, which has been rounded or cut to the desired thickness prior to the bending operation, and (2) bent or curved by a process which subjects the wood to a steaming or boiling water treatment to make it pliable, after which it is bent by hand or machine to the curvature of a metal form in which it is placed and clamped and allowed to dry, after which it retains its bent shape. A chair, which all witnesses for both sides agree is a bent-wood chair, the bent parts of which were made by the steaming or boiling water process, is in evidence as plaintiff's illustrative exhibit 1.

It is the defendant's contention that the term "bent-wood furniture" is not limited to furniture the bent or curved parts of which were so made, but also includes furniture the bent or curved portions of which were made in whole or in part of other than solid pieces of wood and which were bent or curved by other means than steaming or boiling.

Neither party raises the issue of commercial designation—in fact, both parties specifically disclaim that it is an issue here. There is no question that the merchandise is furniture of wood, and the sole question at issue is whether it is within the meaning of the term "bent-wood furniture," as used in the tariff act provision, as modified. It should be said, parenthetically, that seemingly no distinction is made between the hyphenated form of the term "bent-wood" and the combined form, "bentwood," and there is no question but that they mean the same thing.

It appears likewise to be undisputed that the method of bending wood intended to be used as parts for chairs and other furniture by the steam or boiling water process was known and used both in this country and abroad for about a hundred years prior to the passage of the Tariff Act of 1930. The method was originally developed in Vienna, Austria, and those two names were sometimes applied to furniture so made.

Sometime in the 1930's, however, at least two other methods of bending or shaping wood for such use were developed. In one, which is the method used in the production of the bent or curved parts of the furniture here involved, a solid piece of wood is "ribboned," i. e., saw cuts are made through it at the point where the bend or curve is desired. Strips of wood combined with glue are introduced to replace the material cut out by the saw, following which the wood is bent or shaped by hand or air pressure and clamped in a form and air dried or subjected to a frequency gluer, an electronic device for quickly setting the glue.

The other method involves the use of veneers and laminating the same with glue under high pressure and high-frequency heat at the same time the part is bent or shaped. Neither of the two last-described processes, the "ribboning" nor the "laminating" process, requires the use of steam or boiling water.

It seems clear that at the time of the passage of the Tariff Act of 1930 neither the "ribboned" nor the "laminated" type of furniture with bent or curved parts was known to the trade and commerce of this country, because they had not then been developed. Consequently, the dictionary definitions of the term "bent-wood" of that period show its application to furniture made of parts bent by the steam method. Illustrative of these definitions is that found in Webster's New International Dictionary, 1930, cited and quoted in the brief filed on behalf of the plaintiff as follows:

bent-wood. a. Made of parts bent and not framed into the required shape; said specif. of a kind of furniture, often called *Austrian* or *Vienna* furniture, because largely imported from Vienna in Austria.

But tariff acts are made for the future, as well as the present, and it is well established that an *eo nomine* designation embraces merchandise the existence of which was not known to commerce when the statute was enacted. *United States* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294. The rule was thus laid down in *Newman* v. *Arthur*, 109 U. S. 132, 27 L. ed. 883:

The fact that, at the date of the passage of the Act, goods of the kind in question had not been manufactured, cannot withdraw them from the class to which they belong, as described in the statute, where, as in the present case, the language fairly and clearly includes them.

So here, after the passage of the Tariff Act of 1930, at least two new methods for bending wood were developed, i. e., the "ribboning" and the "laminating" methods, to accomplish the same purpose for which the steam or boiling water method was used.   As indicative of the fact that the term "bent-wood" no longer referred specifically to "Austrian" or "Vienna" furniture (which was made by the steam or boiling water method), the definition of "bentwood" in the 1945 edition of Webster's New International Dictionary did not contain that statement and read only as follows:

> Made of wood that is bent, and not cut into shape, as chairs, etc.

It must be remembered that what is here in question is the common meaning of the term "bent-wood," as used in the statute, as modified. In order to determine that common meaning, the court may resort to helpful extrinsic aids, including, but not limited to, dictionaries, encyclopedias, and other written authorities, and the testimony of witnesses.   *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, 355, 356, T. D. 43090.

Sources of information often useful, but not necessarily controlling, in the determination of the meaning to be ascribed to words used in tariff statutes, are the various Summaries of Tariff Information which, generally speaking, are prepared by the United States Tariff Commission as an aid to the Congress and its committees in the preparation or revision of tariff laws.   Other sources are the Digests of Trade Data prepared by the same Commission, containing information furnished to the negotiators of trade agreements.

In the "Digests of Trade Data with Respect to Products On which Concessions Were Granted By the United States," published with respect to the Mexican Trade Agreement, the following is found under the caption "BENTWOOD FURNITURE" on page 285:

> *Description and uses.*   Bentwood furniture used in the United States consists chiefly of chairs for use in restaurants, offices, and other public places where strong and lightweight equipment is desired.   It is customarily made, in several types of chairs, of oak, elm, birch, or beech wood, which is bent to form the back bow, seat rail, and other essential parts.

In the "Summaries of Tariff Information, Volume 4, Wood and Manufactures, Washington, 1948," shown by its introduction to have been prepared by the United States Tariff Commission in response to a resolution of the Ways and Means Committee of the House of Representatives, the following is found (p. 87):

BENTWOOD FURNITURE AND PARTS

(PAR. 412)

Comment

Bentwood furniture consists principally of lightweight chairs of which the component sections are made of wood bent to shape rather than of sawed pieces commonly used in the conventional or cut-wood type of furniture.

None of these descriptions limit bentwood furniture to that which has parts bent by the steam or boiling water process. The distinction between bentwood and other furniture seems to be the manner in which the parts are shaped, whether by bending on the one hand, and sawing, cutting, or other shaping on the other.

We have considered the evidence as to trade practice contained in the testimony of the witnesses for both parties. All of such evidence was confined to the experience of each witness, and was not so extensive as to be persuasive of one or the other contentions here made.

We conclude that the common meaning of the term "bentwood furniture" as used in the tariff act, as modified, embraces furniture, the parts of which were bent to shape by means other than steam or boiling water, and includes furniture, the parts of which were bent to shape by the "ribboning" process, shown to have been used in connection with the merchandise at bar.

Judgment will, therefore, issue overruling the protest claim accordingly.