BEFORE THE FIRST DIVISION, AUGUST 30, 1956

**No. 60191.**—Davies Turner & Company *v.* United States, protest 194412–K/4119 (Chicago).

MOLLISON, Judge: The issues raised by this protest are the same as those involved in the case of *Davies Turner & Company v. United States*, 32 Cust. Ct. 329, C. D. 1622, and the record in that case was, on motion of counsel, incorporated as part of the record herein. The merchandise involved consists of furniture such as chairs, stools, and tables, parts of which were made of veneers of wood laminated with glue and bent to shape by the use of machinery. It was assessed with duty at the rate of 22 per centum ad valorem under the provision for "bentwood furniture" in paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the Mexican Trade Agreement, T. D. 50797.

The claims pressed by the plaintiff at the trial and in the brief filed in its behalf are for duty at the rate of 20 per centum ad valorem under the provision for chairs, wholly or in chief value of wood, not specially provided for, in said paragraph 412, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, and at 12½ per centum ad valorem under the provision for other furniture, wholly or in chief value of wood, not

specially provided for, in said paragraph and act, as modified. The latter claim, incidentally, is not specifically made in the protest, either as originally drawn or as subsequently amended.

In our decision in the cited and incorporated case, we held that the issue turned on the common meaning of the term "bent-wood," as found in the act; that, at the time of passage of the Tariff Act of 1930, merchandise such as that in issue, bent by the laminating process, was not known to the trade and commerce of this country; that at the time the common meaning of the term "bent-wood" had application to furniture made of solid, as distinguished from laminated, wood parts, which parts were bent by steam or hot water; that, subsequently, furniture made by the laminating process did become known to the trade and commerce of this country; that the common meaning of the term "bent-wood" then included such merchandise; and that, by reason of the well-settled rule as to future coverage of tariff provisions, the laminated furniture was embraced by the tariff provision for "bent-wood furniture."

In this case, plaintiff's principal contention is that furniture, the parts of which are made by the laminating process, has never been known commonly or commercially in this country as "bent-wood furniture" and that the common and commercial meaning of that term has always referred only to furniture, the parts of which are solid pieces of wood, bent or curved by subjection to boiling water or steam to make it pliable, and that such common and commercial meaning excludes furniture of laminated woods bent to shape by other processes.

In support of its position, plaintiff offered, besides the record in the incorporated case, the testimony of two additional witnesses. As we understand the theory under which plaintiff's case was presented, as set forth above, which does not raise the issue of commercial designation, the testimony of these witnesses as to the meaning of the term "bent-wood furniture" in their experience in the trade and commerce of the United States was offered as an aid to the court in determining the common meaning of the term, it being presumed to be the same as the meaning of the term in the said trade and commerce.

One of the witnesses, an interior designer, had purchased bentwood furniture at wholesale, and, save for one occasion, had sold it at retail, apparently only in Illinois. Her understanding of the term was that it included only furniture made of parts of solid wood, steamed and softened, and then formed. In our view, this witness did not display so broad an experience, either from a territorial or a volume of business standpoint, as to endow her testimony with the necessary degree of authority to outweigh, in the court's mind, the effect of the prior record.

The other witness, a buyer and architect for a firm which imports furniture, fabrics, lamps, glass, and china, apparently had an experiential background similar to that of the first witness, that is, he bought at wholesale and sold at retail. While it seems that this witness had language difficulties, at one point in his testimony he stated that he had never sold merchandise such as exhibit 3 in the incorporated case, which had been bent by the laminating method, as bentwood furniture, while later he stated that he called such furniture bentwood and that the term had reference to any piece of wood that was bent. His testimony, therefore, besides lacking authority, was somewhat contradictory.

It will thus be seen that the evidence offered in the present case does not warrant a result different from that reached in the case the record in which was incorporated herein. Counsel for the plaintiff has, however, in the brief filed in its behalf cited further lexicographic and other authorities on the subject, and has made at least one argument not previously made.

We have examined the definitions and matter contained in the dictionaries, encyclopedias, tariff summaries, and tariff hearings, cited by the plaintiff, and believe that the later ones, that is, those subsequent in date to 1930 or the time

when furniture such as that at bar first became known to the trade and commerce of the United States, do not limit the terms "bent-wood" or "bent-wood furniture" to articles, the parts or members of which are of solid wood made pliable by steam or hot water. As we said in the decision in the earlier case,

* * * The distinction between bentwood and other furniture seems to be the manner in which the parts are shaped, whether by bending on the one hand, and sawing, cutting, or other shaping on the other.

Counsel for the plaintiff has sought to show that, in the case of *Transatlantic Shipping Co.* v. *United States*, 63 Treas. Dec. 1067, T. D. 46460, this court laid down a definition of the common meaning of the term "bent-wood furniture." While the issue as to whether the willow furniture there involved was classifiable under the provision for "bent-wood furniture" was raised in that case, the leading opinion reported in that case, far from purporting to establish the common meaning of the term, indicates that the record on the point was unsatisfactory, but that at all events the provision for "furniture wholly or in chief value of * * * osier or willow" was narrower and more specific in its application to the merchandise than the provision for "bent-wood furniture." Moreover, it was pointed out, the classification of willow furniture under the "bent-wood furniture" provision would leave the former provision practically meaningless. Further, it appears that there was not complete concurrence in the leading opinion, as the other two members of the division which decided the case concurred only in the conclusion or result, and apparently not in the reasoning.

We have examined the record and the brief in the case at bar very carefully and find no reason for departing from the conclusions we reached in the earlier case. Judgment will, therefore, issue overruling the protest accordingly.